IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DOMINIQUE ROMERO-VALDEZ,

    Plaintiff/Counter-Defendant,

v.                                                                           No. 1:23-cv-01084-LF-GJF

PARNALL LAW FIRM, LLC,

    Defendant/Counter-Plaintiff.

**MOTION FOR SUMMARY JUDGMENT ON ENFORCEMENT OF RELEASE**

Defendant/Counter-Plaintiff Parnall Law Firm, LLC (Parnall Law) hereby moves, pursuant to Federal Rule of Civil Procedure 56 and D.N.M.LR-Civ. 56.1, for dismissal of all claims brought by Plaintiff/Counter-Defendant Dominique Romero-Valdez (Ms. Romero-Valdez).  As grounds for this motion, Parnall Law states that Ms. Romero-Valdez signed a Separation of Employment Agreement (the Agreement), in which she agreed that she would "not bring any claim, lawsuit or charges against Parnall or any owner, agent or employee, for any reason," in exchange for a severance payment.  Ms. Romero-Valdez obtained that severance payment and has now impermissibly filed this lawsuit containing claims from which she released Parnall Law.

Ms. Romero-Valdez filed her Second Amended Complaint for Damages and Declaratory Judgment on February 28, 2024 (Doc. 27).  In that Second Amended Complaint, Ms. Romero-Valdez asserts a broad panoply of claims, as follows: (I) Constructive and Actual Retaliatory Discharge in Violation of Public Policy; (II) Breach of Implied Contract; (III) Breach of Implied Covenant of Good Faith and Fair Dealing; (IV) Violation of the Family Medical Leave Act and Interference of FMLA Benefits; (V) Interference with Benefits Under the New Mexico Healthy Workplaces Act & Defendant's Policies; (VI) Violations of the New Mexico Human Rights Act, Title VII, and the Pregnancy Discrimination Act; (VII) Retaliation; (VIII) Interference With Rights

in Violation of the HRA and Title VII/Unlawful Interference With Statutory Rights; (IX) Breach of Contract and Recission; (X) Fraud; (XI) Defamation; (XII) Declaratory Judgment.

Ms. Romero-Valdez knowingly and voluntarily released all such claims when she decided to voluntarily resign her employment from Parnall Law and accept a severance payment, instead of committing to meet the requirements of her job there. As part of that resignation and severance payment, Ms. Romero-Valdez agreed to the terms of a simple and straightforward Separation of Employment Agreement, in which she agreed that she would not bring a lawsuit against Parnall Law. Ms. Romero-Valdez understood that agreement and understood that it was part of the transaction in which she resigned and accepted a severance payment. For the first time, in her Second Amended Complaint, Ms. Romero-Valdez now tries to suggest that her resignation was one transaction and the agreement was a separate transaction. The Court should not countenance Ms. Romero-Valdez's attempts to continue to breach the simple agreement into which she entered.

The Court should enforce Ms. Romero-Valdez's Separation of Employment Agreement and dismiss her claims.

**Standard for Summary Judgment**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To overcome a motion for summary judgment, the nonmoving party cannot "rely upon unsupported allegations without 'any significant probative evidence tending to support the complaint.'" *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Instead, "the nonmoving party must, at a minimum, direct the court to *facts* which establish a genuine issue for trial." *Id.* (emphasis in the original). "Inferences supported by conjecture or speculation will not defeat a motion for summary judgment." *Self v. Crum*, 439 F.3d

1227, 1236 (10th Cir. 2006); *see also Amparan v. Demir*, 234 F. Supp. 3d 1110, 1115 (D. N.M. 2017) ("A properly supported summary judgment motion will not be defeated by speculative inferences, conclusory allegations, or mere conjecture.").

**Statement of Material Facts**

1. Ms. Romero-Valdez began working for Parnall Law in September of 2021. Aff. of R. Fraire, attached hereto as Exhibit 1 at ¶ 3; (Second Am. Compl., Doc. 27, ¶ 7.)

2. Ms. Romero-Valdez was initially hired by Parnall Law as a Medical Records Assistant, and at the time of the termination of her employment, she was working as a Legal Assistant in the Case Manager Department. Ex. 1 at ¶ 3; *see also* (Second Am. Compl., Doc. 27, ¶ 7).

3. In June of 2023, management at Parnall Law decided to provide Ms. Romero-Valdez with an ultimatum concerning her employment. Accordingly, at 9:00 a.m. on June 27, 2023, Roni Fraire, Parnall Law's Operations Manager, met with Ms. Romero-Valdez via Zoom concerning her employment at Parnall Law. Ex. 1 at ¶ 4; (Second Am. Compl., Doc. 27, ¶ 17).

4. At that meeting, Ms. Fraire informed Ms. Romero-Valdez that she needed to commit to meeting her metrics on an ongoing basis or that Parnall Law would terminate Ms. Romero-Valdez's employment. Ex. 1 at ¶¶ 5, 6, 7; (Second Am. Compl., Doc. 27, ¶¶ 19, 20). Because Ms. Romero-Valdez did not qualify for or need any statutory or policy-based leave at the time of the meeting, Ms. Fraire neither discussed such leave nor discouraged Ms. Romero-Valdez from applying for such leave in the future. Ex. 1 at ¶ 7; (Second Am. Compl., Doc. 27, ¶¶ 19-21).

5. Ms. Fraire informed Ms. Romero-Valdez at that meeting that if she chose not to continue with Parnall Law and commit to meeting her metrics, that she could instead resign and accept a six-week severance payment. Ex. 1 at ¶ 6; (Second Am. Compl., Doc. 27, ¶ 20).

3

6. At the conclusion of the June 27 meeting, Ms. Romero-Valdez asked for time to consider the choice of whether to commit to doing her job or resign and be paid severance. Ms. Fraire told her she could consider the choice and provide an answer on a follow-up Zoom call at 9:00 a.m. the following morning, approximately 24 hours after the conclusion of the initial meeting. Ex. 1 at ¶ 8; (Second Am. Compl., Doc. 27, ¶¶ 20, 23).

7. At the meeting on the morning of June 28, 2023, Ms. Romero-Valdez informed Ms. Fraire that she had decided to resign from Parnall Law and accept the severance payment. Accordingly, Ms. Fraire forwarded a copy of a Separation of Employment Agreement (the Agreement) to Ms. Romero-Valdez to consider. Ms. Romero-Valdez read the simple and straightforward Agreement, did not ask any questions, assented to the Agreement by typing her name into the Agreement, and then sent the Agreement to Ms. Fraire from Ms. Romero-Valdez's work email. A copy of the Agreement is attached to Exhibit 1 as Exhibit A, and a copy of the email from Ms. Romero-Valdez's work email account is attached to Exhibit 1 as Exhibit B. Ex. 1 at ¶ 9; (Second Am. Compl., Doc. 27, ¶¶ 26-31).

8. In the Agreement, which concerned Ms. Romero-Valdez's resignation—hence the name "Separation of Employment Agreement"—Ms. Romero-Valdez agreed, "for consideration of severance pay for six weeks," that she would "not bring any claim, lawsuit or charges against Parnall or any owner, agent or employee, for any reason." Ex. A to Ex. 1.

9. On June 30, 2023, the next payday following Ms. Romero-Valdez's resignation, Parnall Law direct deposited the severance payment, equaling 240 hours at the Ms. Romero-Valdez's normal pay rate, in addition to other wage payments, into Ms. Romero-Valdez's bank account, as it had done throughout her employment. Ex. 1 at ¶ 10; Ex. C to Ex. 1.

10. Ms. Romero-Valdez accepted the severance payment, and has not returned it. Ex. 1 at ¶¶ 10, 11.

**Argument**

**MS. ROMERO-VALDEZ'S AGREEMENT BARS HER LAWSUIT.**

In her Second Amended Complaint (Doc. 27), Ms. Romero-Valdez asserts a litany of somewhat contradictory and often difficult to understand claims, including claims sounding in common law and those under statute. All of those claims should be dismissed based on the Separation of Employment Agreement entered into by Ms. Romero-Valdez.

**New Mexico Law Requires Dismissal of Counts I, II, III, IV, V, IX, X, XI, and XII. It Also Requires Dismissal of Counts VI, VII, and VIII, Insofar as Those Claims Rely on the New Mexico Human Rights Act.**

"New Mexico has a strong public policy of freedom to contract that requires enforcement of contracts unless they clearly contravene some law or some principle of justice or rule of public morals." *Central Market Ltd. V. Multi-Concept Hospitality, LLC*, 2022-NMCA-021, ¶ 22, 508 P.3d 924 (quotation marks, ellipses, brackets, citation omitted). Thus, "[t]he existence of a contract between the parties is generally a question of law to be decided by the trial court." *Garcia v. Middle Rio Grande Conservancy Dist.*, 1983-NMCA-047, ¶ 22, 99 N.M. 802, 664 P.2d 1000, *overruled on other grounds by Montoya v. Akal. Sec., Inc.*, 1992-NMSC-056, 114 N.M. 354.

"In order for a promise to be legally enforceable, there must be an offer, an acceptance, consideration, and mutual assent." UJI 13-801 NMRA. "Ordinarily, when one party makes an offer, and the other party accepts the offer, there is mutual assent." UJI 13-816 NMRA. And "[m]utual assent is based on objective evidence, not the private, undisclosed thoughts of the parties." *Pope v. Gap, Inc.*, 1998-NMCA-103, ¶ 13, 125 N.M. 376, 961 P.2d 1283. Thus the Court must "look to whether either party put forth evidence showing that the *opposing* party—

through its written or spoken words, acts or failures to act, or some combination thereof—objectively manifested assent to the terms that party now denies." *Madrid v. Madrid Enters., Inc.*, 2022 WL 3594403, *3 (N.M. Ct. App., Aug. 23, 2022).

In the Agreement at issue here, Ms. Romero-Valdez agreed that in conjunction with her separation from employment and "for consideration of severance pay for six weeks," that she would not "bring any claim, lawsuit or charges against Parnall or any owner, agent or employee, for any reason." Statement of Material Facts (Facts), *supra* at ¶ 8. In exchange, Parnall Law paid Ms. Romero-Valdez the agreed-upon severance payment. Facts ¶ 9. Ms. Romero-Valdez accepted the payment and the benefit of the payment and kept it. Facts ¶ 10. Despite her promise not to sue Parnall Law "for any reason," Ms. Romero-Valdez has now asserted six claims under New Mexico common law (Counts I, II, III, IX, X, and XI), and six statutory claims (Counts IV, V, VI, VII, VIII, and XII).[1]

After Parnall Law informed Ms. Romero-Valdez that she needed to commit to meeting all the requirements of her job or else face termination, it offered her the option to resign with a severance payment. Facts ¶¶ 3-5. Ms. Romero-Valdez took approximately 24 hours to consider that decision and then informed Parnall Law that she had decided to resign and accept a severance payment. Facts ¶¶ 6-7. Ms. Romero-Valdez was not eligible for and did not need any statutory or policy-based leave at the time of the initial meeting, and Parnall Law's Operations Manager thus neither discussed such leave nor sought to discourage Ms. Romero-Valdez from taking any such

---

[1] Ms. Romero-Valdez has also raised statutory causes of action under Title VII (including the Pregnancy Discrimination Act), mixed in with alleged violations of the New Mexico Human Rights Act, her Counts VI, VII, and VIII. Those claims, insofar as they assert violations of Title VII, are subject to a particular standard for release of such claims. *See, e.g., Torrez v. Public Serv. Co. of New Mexico, Inc.*, 908 F.2d 687 (10th Cir. 1990). Accordingly, those claims are addressed separately in this motion. *But cf. Chavez v. New Mexico*, 397 F.3d 826, 830-31 (10th Cir. 2005) (applying New Mexico contract law to settlement agreement and noting that the "applicable principles of contract law are not different in federal and New Mexico law"). But whichever standard applies to each claim, Ms. Romero-Valdez validly released Parnall Law from her claims, and they should be dismissed.

leave in the future. Facts ¶ 4. Ms. Romero-Valdez then considered the Agreement, including its two-sentence release, which states in full "I will not bring any claim, lawsuit or charges against Parnall or any owner, agent or employee, for any reason. Unemployment claims are excluded from this agreement." Facts ¶ 8. Ms. Romero-Valdez did not ask any questions concerning the release, instead she agreed to its terms by typing her name in and then emailing the Agreement to the Parnall Law representative. Facts ¶ 7.

Ms. Romero-Valdez was provided a reasonable set of options by her employer, given time to consider them, presented with an uncomplicated release agreement in the context of her separation from employment, and was paid agreed-upon consideration for entering into the Agreement. Ms. Romero-Valdez assented to the terms of the Agreement. Ms. Romero-Valdez could have chosen to continue her employment with Parnall Law, but she instead voluntarily chose to take a severance payment and move on. Parnall Law provided Ms. Romero-Valdez with reasonable options, in keeping with reasonable, good faith business practices, and Ms. Romero-Valdez should not be allowed to breach her Agreement with impunity solely because she now regrets not committing to meet the requirements of her job. The Court should enforce the Agreement and dismiss Ms. Romero-Valdez's Counts I, II, III, IV, V, IX, X, XI, and XII and Counts VI, VII, and VIII, to the extent they assert claims under the New Mexico Human Rights Act.

Ms. Romero-Valdez has, for the first time in her Second Amended Complaint, filed nearly four months after her initial Complaint (Doc. 1-2), attempted to assert that the Agreement was somehow procured by fraud on the part of Parnall Law. In new allegations throughout the Second Amended Complaint, Ms. Romero-Valdez weaves the incredible story that the Agreement was somehow separate and apart from the deal Ms. Romero-Valdez struck in order to resign from her

7

employment and obtain a severance payment. (*See* Second Am. Compl. at ¶¶ 26, 29, 32, 35, 133, 147, 149, 150). Never mind that the Agreement is entitled "Separation of Employment Agreement." Never mind that the Agreement includes a provision concerning the same severance pay offered to Ms. Romero-Valdez.

Ms. Romero-Valdez's newly-minted Counts IX and X, for "Breach of Contract and Recission" and "Fraud" are both based on the somewhat bizarre claim that Ms. Fraire "misrepresented" to Ms. Romero-Valdez that Ms. Romero-Valdez would need to sign the Agreement in order to obtain her severance pay. (*See* Second Am. Compl. ¶¶ 133, 147, 149, 150). But that was not a misrepresentation, because the Agreement was provided to Ms. Romero-Valdez in order to put into place Ms. Romero-Valdez's resignation and severance payment, as it specifies. Facts ¶¶ 7-8; Ex. A to Ex. 1. Ms. Romero-Valdez understood that fact from the plain language of the simple Agreement she reviewed and signed. In other words, the objective evidence shows that Ms. Romero-Valdez assented to the terms of the Agreement, and her *post-hoc* attempts to muddle the clear transaction must not be allowed. *See Pope*, 1998-NMCA-103 at ¶ 13.

The clear language of the Agreement specifies that the "consideration" of six weeks of severance pay would be paid to Ms. Romero-Valdez in exchange for her assent to the terms of the Agreement. Ms. Romero-Valdez received that payment and kept it, after signing the Agreement to obtain it. Facts ¶¶ 8-10. She must be held to her Agreement, and her claims must be dismissed.

**Law Concerning Title VII Releases Requires Dismissal of Ms. Romero-Valdez's Counts VI, VII, and VIII, to the Extent Those Claims are Based on Title VII.**

In her Count VI, Ms. Romero-Valdez alleges that she was discriminated against based on sex and pregnancy. Ms. Romero-Valdez alleges that Parnall Law's treatment of her violates provisions of Title VII (42 U.S.C. §§ 2000e, *et seq.*) and the Pregnancy Discrimination Act (42 U.S.C. § 2000e(k)). (Second Am. Compl. ¶¶ 110 – 115.) Ms. Romero-Valdez's Count VII alleges

that Parnall Law retaliated against Ms. Romero-Valdez under the same laws for becoming pregnant. (Second Am. Compl. ¶¶ 119-123.) Finally, Ms. Romero-Valdez alleges, in part, in her Count VIII that Parnall Law has interfered with her rights under Title VII by requiring her to sign "a release of rights to file a charge" of discrimination. (Second Am. Compl. ¶ 127.) Notably, Ms. Romero-Valdez has already filed such a charge of discrimination and has received a right to sue letter from the Equal Employment Opportunity Commission. (*See* Second Am. Compl. ¶¶ 115, 122, 128). But putting that aside for the moment, Ms. Romero-Valdez has released the Title VII based claims she brought in this lawsuit by knowingly and voluntarily signing the Agreement.

"Federal common law governs the enforcement and interpretation of [Title VII] agreements because the rights of the litigants and the operative legal policies derive from a federal source." *Snider v. Circle K. Corp.*, 923 F.2d 1404, 1407 (10th Cir. 1991) (internal quotation marks and citation omitted). Thus, "Title VII . . . employment discrimination claims may be waived by agreement . . . but the waiver of such claims must be knowing and voluntary." *Torrez*, 908 F.2d at 689. In *Torrez*, the Tenth Circuit adopted the "totality of the circumstances" approach to determine whether a claimant entered into a release knowingly and voluntarily.

In order to assess the totality of the circumstances and determine whether a release was knowing and voluntary, a court should look generally at "(1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether plaintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver

9

and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law." *Id.* at 689-90 (brackets, quotation marks, and citation omitted).

Here, the language of the Agreement's release provision is about as clear and uncomplicated as one could imagine. In its entirety, it reads "I will not bring any claim, lawsuit or charges against Parnall or any owner, agent or employee, for any reason." Tellingly, even though she had previously asked for further time to consider whether she would resign her employment, Ms. Romero-Valdez read the Agreement and did not ask any questions concerning the Agreement's language. Nor did she ask for further time to review the Agreement before signing it, or ask for any change to the Agreement. Facts ¶ 7. The clear and easy-to-understand language of the Agreement referenced "any" lawsuit, and was provided in the context of a Separation of Employment Agreement. Ms. Romero-Valdez knew and understood that she needed to sign the Agreement in order to obtain the severance payment she sought.

Indeed, Ms. Romero-Valdez worked for Parnall Law for a period of nearly two years, most recently as a Legal Assistant. Ex. 1 at ¶¶ 3, 9. She had the experience to understand that in a settlement situation, a release would be required. She worked for lawyers, and she had a full twenty-four hour period to consider her decision about whether to resign and take a severance or to commit fully to meeting the requirements of her position. Facts ¶¶ 4-6. It is unknown whether Ms. Romero-Valdez consulted with an attorney or whether she even sought such consultation. But she had time to do so. The language in the Agreement was clear enough that Ms. Romero-Valdez must have understood her rights after signing, in that she knew she had agreed not to sue Parnall Law. Her connection to Parnall Law was as an employee, and the Agreement was provided to her in the context of separation of employment. It is and was abundantly clear that Ms. Romero-Valdez was releasing employment claims.

The payment given to Ms. Romero-Valdez, which she agreed to, was in excess of that to which she was already entitled. She was paid for 240 hours of work that she did not do. Facts ¶ 9. She accepted the payment and kept it, evidencing her intent to assent to the Agreement's terms. Facts ¶ 10. Parnall Law has kept its side of the bargain. Ms. Romero-Valdez was not meeting the requirements of her employment but was offered a chance to do so. She instead decided to quit her employment and accept a severance payment to which she was not otherwise entitled. She knowingly and voluntarily signed the Agreement, and the Court should dismiss her claims.

As a final aside, in her Second Amended Complaint at paragraph 126, Ms. Romero-Valdez alleges that "[a]s a matter of public policy, an employer may not interfere with the protected right of an employee to file a charge, testify, assist, or participate in any manner in an investigation, hearing, or proceeding under Title VII of the Civil Rights Act of 1964." Ms. Romero-Valdez then references the fact that the Agreement states that Ms. Romero-Valdez would not bring any "charges" against Parnall Law. Notably, Ms. Romero-Valdez brought charges of discrimination with both the Equal Employment Opportunity Commission and the Human Rights Commission, and Parnall Law did not interfere with her right to do so.

While Parnall Law agrees that courts have determined that language in a release specifying that an employee may not bring a charge may be declared void as against public policy, that does not render the entire release void. As the Fifth Circuit specified in its decision in *E.E.O.C. v. Cosmair, Inc.*, 821 F.2d 1085, 1091 (5th Cir. 1987), however, "the fact that a waiver of the right to file a charge is void does not invalidate a waiver of a cause of action with which it is conjoined." Parnall Law is seeking here to enforce only Ms. Romero-Valdez's promise not to bring a claim or lawsuit, a promise she has definitively breached. That provision is enforceable, and the Court should not abide by Ms. Romero-Valdez's decision to just ignore it.

**Conclusion**

For all the reasons cited herein, Ms. Romero-Valdez's Complaint should be dismissed.

Respectfully submitted,

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By: */s/ William G. Gilchrist*
     William G. Gilchrist
P. O. Box 1888
Albuquerque, NM 87103
Telephone: (505) 765-5900
Fax: (505) 768-7395
dgilchrist@rodey.com
*Attorney for Defendant Parnall Law Firm, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 27th day of March, 2024, I filed the foregoing electronically which caused all counsel of record to be served by electronic means, as more fully reflected in the Notice of Electronic Filing.

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By: */s/ William G. Gilchrist*
     William G. Gilchrist