IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DOMINIQUE ROMERO-VALDEZ,
    Plaintiff/Counter-Defendant,

v.                                      No. 1:23-cv-01084-LF-GJF

PARNALL LAW FIRM, LLC,
    Defendant/Counter-Plaintiff.

### DECLARATION OF RONI FRAIRE

STATE OF NEW MEXICO    )
                                   )   SS:
COUNTY OF BERNALILLO   )

      I, Roni Fraire, pursuant to the requirements of 28 U.S.C. § 1746, swear and affirm, under penalty of perjury, that I have direct knowledge of the contents of this declaration and could competently testify concerning its content if called to do so. The statements contained herein are true and correct.

      1)      My name is Roni Fraire. I work as the Operations Manager for Parnall Law Firm, LLC (Parnall Law), the Defendant in this matter. In that capacity, I assist in overseeing employee issues at Parnall Law and take part in implementing employment decisions, including terminations.

      2)      In that capacity, I was familiar with the work of Dominique Romero-Valdez (Dominique), the plaintiff in this matter. I supervised Dominique's supervisors, and I was kept up to date on Dominique's performance, which Parnall Law measures in large part by recording metrics concerning required tasks to be performed.

      3)      Dominique began working at Parnall Law in September of 2021. She was hired as a Medical Records Assistant and worked in that role until July 22, 2022. During her work as a



Medical Records Assistant, she was not meeting her metrics, and her Supervisor pulled her off of case assignments altogether. He began using her as a personal assistant to send faxes and do minimal clerical work. Parnall Law gave her another opportunity to integrate herself by moving her to the Case Manager team to learn the role of Legal Assistant. She started training in that Legal Assistant role on July 25, 2022. At the time she terminated her employment on June 28, 2023, Dominique was a Legal Assistant in the Case Manager Department.

4) For a long time prior to June 27, 2023, Dominique had consistently failed to meet her required metrics, and she had often been late to work or for meetings. Despite her supervisors working with her and attempting to support her to correct these deficiencies, she did not show continued improvement. Due to those issues, as well as Dominique's failure to open a claim for more than a week – a task that is supposed to be done within 24 hours – Parnall Law decided to provide Dominique with a final ultimatum. Accordingly, I scheduled a meeting via Zoom with her for 9:00 a.m. on June 27, 2023.

5) On the Zoom meeting, I informed Dominique that I needed to speak with her about her future with Parnall Law. Dominique immediately began talking about maternity leave, which she anticipated she would be taking in a few months' time, and I then made it clear to her that the discussion we needed to have was about her current and past performance and need to correct the same.

6) On the Zoom meeting, I informed Dominique that Parnall Law would like to find a way to continue to work with her, but that she needed to commit to meeting her required metrics on an ongoing basis. I told her that Parnall Law would commit to providing her with further training and support, if she chose to make that commitment. I told her that Parnall Law would give her one month to show that she could improve and consistently meet her metrics. I

informed her that if she did not improve by the end of that month, that Parnall Law would terminate her employment. As an alternative, I presented her with the option of resigning and being paid six weeks of severance pay at her regular hourly rate. I informed her that she could voluntarily resign her employment and receive the proposed six weeks of severance pay.

7) At no point during the meeting did Dominique ask for any type of leave, nor did she indicate that she was in need of any type of immediate leave. Accordingly, I never addressed leave with Dominique, nor did I discourage Dominique from applying for or taking any leave to which she may have been entitled. Instead, the conversation was framed to make Dominique aware that she needed to meet the performance expectations of her job at Parnall Law, as other employees were and are required to do.

8) At the conclusion of the meeting, Dominique asked for further time to consider whether she would (a) commit to meeting the requirements of her job and continuing her employment with Parnall Law or (b) accept the severance payment and resign. I told her that I could give her until the following morning to consider the proposal. I set a follow-up Zoom meeting for 9:00 a.m. on June 28, 2023, approximately 24 hours later.

9) At the June 28 meeting, Dominique informed me that she would take the severance payment and resign. I then provided her a copy of the Separation of Employment Agreement (the Agreement) to review. Dominique did not ask any questions concerning the Agreement. At that point, I stayed on the Zoom call with Dominique, while she typed her name/signature into the Agreement, dated it, attached it to an email, and emailed it to me. A copy of the Agreement, electronically signed by Dominique, is attached hereto as Exhibit A. A copy of the email to which the Agreement was attached is attached hereto as Exhibit B.

10) Two days later, on Friday, June 30, 2023, the next regular payday for Parnall Law, Parnall Law paid Dominique her final paycheck, including all hours she had worked through her resignation, both normal and overtime hours. In addition, Parnall Law paid Dominique for unused Paid Time Off hours. Finally, Parnall Law paid Dominique for six weeks of severance (40 hours times six weeks, totaling 240 hours) at her normal rate of pay. That pay was deposited into Dominique's bank account, via the normal direct deposit process that Parnall Law had used previously to pay Dominique's wages. Dominique received the severance pay and has never contacted Parnall Law to indicate otherwise. A copy of the paystub and payment voucher for that payment is attached hereto as Exhibit C.

11) By signing the Agreement and accepting the severance pay Dominique agreed not to "bring any claim, lawsuit or charges against Parnall or any owner, agent or employee, for any reason." The Agreement made clear, however, that "[u]nemployment claims are excluded" from the reach of the Agreement.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED ON _March 25_____, 2024.

_____
Roni Fraire