IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DOMINIQUE ROMERO-VALDEZ,

    Plaintiff/Counter-Defendant,

v.                                                                                                 No. 1:23-CV-01084-LF-GJF

PARNALL LAW FIRM, LLC

    Defendant/Counter-Plaintiff.

**REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT THAT THE SEPARATION OF
EMPLOYMENT AGREEMENT IS UNENFORCEABLE [DOC. 95]**

      Plaintiff has moved to invalidate the Separation of Employment Agreement, [Doc. 95], because, after she conceded to resign in exchange for six weeks paid hourly wages, Defendant *law firm* instructed Plaintiff "she had to sign…this paper" that, Defendant did not tell Plaintiff, was a release of claims. Ms. Romero-Valdez ("DRV") reasonably understood she was to be paid for resigning immediately; she did not know "the paper" was anything more than paperwork documenting resignation. The undisputed circumstances of Parnall Law Firm's forced termination upon an unsophisticated, non-lawyer are facially alarming, if not unlawful, but what happened thereafter is repugnant in fact and law. Plaintiff asks the Court to find the Separation of Employment Agreement unenforceable.

      Plaintiff's and Parnall Law Firm's respective positions are straightforward, but while Plaintiff's position has been consistent, the Firm's has not. Plaintiff says she accepted an offer to immediately resign in exchange for six week's paid hourly wages and, thereafter, PLF deceptively obtained a release from her which, as a matter of basic contract law, was a second offer that PLF

breached. PLF says there was only one deal: an offer to immediately resign in exchange for six weeks' pay which Plaintiff should have understood would require a release. No reasonable jury would find there was only one "deal" given the undisputed facts *and* Parnall Law Firm's dithering about why it paid Plaintiff six weeks of paid hourly wages.

I.  **The Firm Cannot Get its Story Straight, and the Court May Disregard the Same.**

In the span of seventeen months, Parnall Law Firm has given varied stories, back and forth and back and forth. First, in Defendant's first summary judgment motion in March 2024, the Firm advanced Fact 5 as undisputed and material:

> 5.  Ms. Fraire informed Ms. Romero-Valdez at that meeting that if she chose not to continue with Parnall Law and commit to meeting her metrics, that she could instead resign and accept a six-week severance payment. Ex. 1 at ¶ 6; (Second Am. Compl., Doc. 27, ¶ 20).

[Doc. 31, at p. 3, Fact 5, <u>*March 27, 2024*</u>].   In that same motion, PLF said Plaintiff understood Plaintiff would have to release claims in order to get the payment she was offered to resign.

> Indeed, Ms. Romero-Valdez worked for Parnall Law for a period of nearly two years, most recently as a Legal Assistant. Ex. 1 at ¶¶ 3, 9. She had the experience to understand that in a settlement situation, a release would be required. She worked for lawyers, and she had a full twenty-four hour period to consider her decision about whether to resign and take a severance or to commit fully to meeting the requirements of her position. Facts ¶¶ 4-6. It is unknown whether

[Doc. 31, at p. 10, <u>*March 27, 2024*</u>]. There are *no facts in the record* that DRV knew she was in a "settlement situation" or that "she had the experience to understand…a release would be required."

Critically, about a year later, PLF admitted in a Request for Admission that *the payment was not for resignation*. That admission came only after Rule 37 discussions, but Defendant finally said the money was for specifically for the release of claims *not for resignation*:

> **REQUEST FOR ADMISSION 50.** Admit that Parnall Law Firm paid Ms. Romero-Valdez only six weeks of hourly wages (the "Payment") and believes that the Payment is consideration for both Ms. Romero-Valdez's resignation and for her release of claims against the Firm.
>
> Admit ____      Deny __X__
>
> Defendant admits that it paid Plaintiff an additional six weeks of hourly wages as a severance payment as consideration for Plaintiff releasing claims against Defendant.
>
> **SUPPLEMENTAL RESPONSE:** Defendant denies that payment of six weeks of hourly wages was consideration for Plaintiff's resignation from Parnall Law but admits that the payment of six weeks of hourly wages was consideration for Plaintiff's release of claims against Parnall Law. Plaintiff chose to voluntarily quit her position, and the payment was for the contemporaneous release of claims, not for Plaintiff agreeing to quit her job.
>
> Date: April 15, 2025        Respectfully submitted,

[Doc. 93-3, at pp. 5-6, **April 15, 2025**].

Just five months later, the Firm reverted course and now tells this Court there was "one deal," i.e., the Firm would pay in exchange for resignation *and* a release:

> Agreement in exchange for payment of a severance. If Plaintiff had not decided to resign on June 28, 2023, then Parnall Law would not have paid her a severance payment equal to six weeks of her wages, irrespective of whether Plaintiff had signed the "Separation of Employment Agreement" or not. As the name suggests, the Agreement itself contemplates that Plaintiff
>
> . . . .
>
> use of FMLA leave). In short, there was one deal done. The jury should decide, based on the facts presented, what terms were encompassed in that deal.

Page **3** of 17

[Doc. 115, at p. 2, **August 25, 2025**]. And in November 2024, Ms. Fraire testified that she told Plaintiff "she had to sign this paper…so we can give you your money" and said nothing about a release of claims.

```
23    Q.  Okay.  So I will just represent to you that
24  Dominique said you met at 9:00 a.m. and that you -- she
25  said that she would take the option two and that you
                                                    Page 237
 1  said, "Okay.  Well, you have to sign this paper and I
 2  need you to do it now because we are going to be
 3  kicking you off the system," or something to that
 4  effect, "within about five minutes"; is that correct?
 5    A.  No.  I did tell her I was going to send her
 6  this paper to be signed and I did tell her we were
 7  going to be disconnecting her from the system.  She
 8  could have sent it later.  She could have signed it and
 9  then sent it later.  She can e-mail us from her own
10  system if she would like.
11    Q.  Okay.  So you are saying that she -- you
12  didn't tell her she had to sign this paper?
13    A.  I did tell her she had to sign it if that's
14  the option she was taking.  I said, "We have something
15  we would like you to sign so we can give you your
16  money."
17    Q.  Okay.  And did you go over it with her?
18    A.  No.
19    Q.  You didn't like read it to her?
20    A.  No, I did not.
```

[Doc. 93-6, at p.60; accord Doc. 115, at p.5, Fact 10].

While PLF's internal inconsistency could seemingly create a dispute of fact, the Court need not consider Defendant's present story (that it paid for resignation *and* a release of claims) when PLF admitted the opposite by RFA. See York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008)("As with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts." Id. (internal quotations omitted)).

PLF's equivocation surrounding Plaintiff's dismissal does not shore up the Firm's actions as acceptable. To the contrary, the undisputed facts demonstrate, as argued in Plaintiff's Motion for Summary Judgment for Breach of Oral Contract, [Doc. 93], that either two contracts were

offered to DRV, one of which PLF breached, or only one contract was offered but fatally omitted an essential term – a release of claims – that PLF later deceived DRV into signing. Either way, the Release of Claims is void because it was procured through fraud.

### II. Defendant's Opposition Paper Does Not Help Validate the Release of Claims.

Parnall Law Firm ("PLF" or the "Firm") has propounded opposing explanations of why it gave Plaintiff contract consideration and, consequently, PLF is walking a tightrope.

The issue of consideration is not the only material contradiction found in PLF's papers relevant to the Separation of Employment Agreement. Plaintiff says Ms. Fraire pressured her into signing the paper, but PLF says this is not true:

> 5  A. No. I did tell her I was going to send her
> 6  this paper to be signed and I did tell her we were
> 7  going to be disconnecting her from the system. She
> 8  could have sent it later. She could have signed it and
> 9  then sent it later. She can e-mail us from her own
> 10 system if she would like.

[Doc. 93-6, at p.60; accord Doc. 115, at p.5, Fact 10]. But in its March 2024 Motion for Summary Judgment, PLF said otherwise:

> 9) At the June 28 meeting, Dominique informed me that she would take the severance payment and resign. I then provided her a copy of the Separation of Employment Agreement (the Agreement) to review. Dominique did not ask any questions concerning the Agreement. **At that point, I stayed on the Zoom call with Dominique, while she typed her name/signature into the Agreement, dated it, attached it to an email, and emailed it to me.** A copy of the Agreement, electronically signed by Dominique, is attached hereto as Exhibit A. A copy of the email to which the Agreement was attached is attached hereto as Exhibit B.

[Doc. 31-1, at p. 3, ¶9]. PLF cannot get around Ms. Fraire's admission, "I did not give her time. I sent it and she signed it and sent it right back." PLF never told Plaintiff she could send it later:



[Doc. 93-4, at p. 50 of 52; Doc. 95, at p. 7, Fact 34 *and* Doc. 117, at p. 7, Response to Fact 34].

PLF now urges this Court to conclude that DRV was not deceived into signing the "release of claims" rather than signing a simple paper because she supposedly could have taken it home to sign and return later, but Ms. Fraire never told Plaintiff she could do so and, indeed, Ms. Fraire "did not give her time." Ms. Fraire did not review the Agreement with Plaintiff or read it to her but, instead, said, "I will email you the agreement and you can sign it and send it back and will be disconnected from the system." Ms. Fraire also admitted by affidavit that she stayed on the Zoom to watch Plaintiff sign and email the agreement back to her.

**III.    PLF's "Disputes" of – and Responses to – Plaintiff's Facts Supporting this Motion Have Not Created a Genuine Dispute of Material Fact.**

Page **6** of **17**

### A. Most of PLF's Responses to the Facts are Argument; PLF Disputed 7 of Plaintiff's 70 Asserted Facts, and THOSE Alleged Disputes Do Not Create Genuine Disputes of *Material* Fact.

PLF expressly "disputed" Facts 30-33,52,58-59, which disputes are mostly argument. Two disputes, however, may truly be disputed. In retrospect, those two facts are likely immaterial to *this* Motion.

**Facts 30-33**: These facts pertain to the timing of events the morning of June 28, 2023, when Ms. Romero-Valdez ("DRV") conceded to resign and PLF subsequently sent her "this paper" to sign. The chronology of events presented to the Court by DRV is not disputed. Ms. Fraire's comments are not disputed. The timing is not disputed. The only "dispute" is PLF's argument that there was only one deal, not two, which is now *a matter of law* for the Court to resolve.

**Fact 52**: This fact (that PLF knew Plaintiff would be taking maternity leave in September 2023) cannot be earnestly disputed but, instead, PLF says that the way Plaintiff weaves the fact into her argument is not fair. Fairness *vel non*, the cited evidence shows the fact is true:

> From: Roni Fraire <roni@parnalllaw.com>
> Sent: Monday, June 12, 2023 10:27 AM
> To: Bert Parnall; Greg Abel
> Subject: RE: PLF Case# [redacted] - [redacted]
> BERT, you won't like my answer. Here is what I can tell you. The PD CMs have 327 pending PD claims. MaryBeth was on this case and she is not as quick as Rene...She's building speed though. All claims are opened by legal assistants and this claim was set to be open on 6/7 by the legal asst Dominique. Dominique had not opened this claim and this is not acceptable. Dominique is not and has not been performing in her role for a while now. I've given JB plenty of room to try to develop her. She does well, when being micromanaged, but not otherwise. ==Dominique is going on maternity leave in September and I'm thinking we just don't bring her back==, I will have JB tweak with Dominique and remind all legal assistants to prioritize cases with a connection to you, to make them absolute priorities.

[Doc. 95 citing Doc. 93-8, at p. 3 of 3].

**Facts 58-59**: These facts pertain to PLF seeking the release of claims in exchange for severance from other employees. PLF disputes its own 30(B)(6) depo testimony and says Attorney Greg Abel sought a release of claims from two attorneys. Apart from the fact that Attorney Abel was not produced to speak for the Firm as a 30(B)(6) witness, DRV acknowledges upon reflection that facts about severance offers to other employees are not material to *this* Motion. *This* Motion

is not about DRV being treated differently, but, instead, is about whether PLF illegally procured a release of claims from her and whether that release ought to be invalidated.

### B. Other Facts Addressed by PLF Do Not Create Genuine Disputes of Material Facts.

PLF responded to many facts without identifying whether they were disputed, but in closely reviewing the same, the responses do not appear to create any genuine dispute of material fact. The responses are simply arguments about how to characterize the facts.

### IV. The Facts Demonstrate that PLF Made Two Contractual Offers to DRV, and PLF Breached the Second Written Offer.

There are two separate contracts related to Plaintiff's termination from the Firm, and Plaintiff maintains the second is invalid for lack of consideration, because it contains an illegal release of claims, and because it was signed only under duress as the result of fraud. As the Parties' respective motions for summary judgment demonstrate, discovery in this case has revealed many facts that were unknown when PLF filed its first motion for summary judgment in March 2024, [Doc. 31]. The instant Motion, [Doc. 95], fully lays out for the Court the detailed timeline of events demonstrating that one contract was concluded prior to the inception of a second. Critically, "[t]he moment of acceptance is the moment the contract is created." 17A Am. Jur. 2d Contracts § 65.

When DRV accepted PLF's offer to resign in exchange for immediate resignation and a payment of 6 weeks paid hourly wages, a contract was formed. Since the early stages of this litigation, ample evidence has surfaced that PLF did not mention a release of claims or tell Plaintiff that to receive a payment, she would have to release her right to sue PLF. To the extent such a "release" was substantively presented to DRV at all, such was not done until *after* DRV had already accepted PLF's first offer to resign, made on June 27, 2023 (the "Verbal Offer"). Thus, based on the disclosed thoughts of the parties, the first contract was formed (the "Oral Contract"), and it did not include a release of claims as a term. See Pope v. Gap, Inc., 1998-NMCA-103, ¶ 13, 125 N.M.

Page **8** of **17**

376, 961 P.2d 1283 ("[m]utual assent is based on objective evidence, not the private, undisclosed thoughts of the parties.").

The undisputed facts also demonstrate that PLF made only *one payment* of six weeks' paid hourly wages to DRV. While DRV understood the payment was for her immediate resignation, Section I above shows the Firm has waffled back and forth and back and forth, about what it says the payment was for. First, it stated that the payment was for the resignation *and* the release – then the Firm stated it was *just for* the release – and now again the Firm states it was for the resignation *and* the release. Given that the Firm cannot keep its own story straight, the Firm's argument about one contract is simply untenable *as a matter of law*, and the release of claims. But even if there were only one contract, the release of claims in the Separation of Employment is unenforceable.

### A.  DRV Was Paid For Only One Contract.

PLF's position that there was only one transaction with DRV related to DRV's "resignation" is contrary to both fact and law. Contrary to PLF's criticism, DRV is not attempting to "muddle" the terms of the two contracts, nor does she need to. The law is clear – a contract is created upon acceptance of an offer. See 17A Am. Jur. 2d Contracts § 65 ("The moment of acceptance is the moment the contract is created."). As the Facts and argument in Plaintiff's Motion for Summary Judgment on Breach of Oral Contract demonstrate, there can only be one of two scenarios in this case: (1) PLF offered DRV two contracts as a matter of law, and PLF has breached one; *or* (2) if PLF's version is legally sound, there was only one contract offered that omitted an essential term on June 27, 2023 – a release of claims – before DRV conceded to resign the next morning, June 28, 2023. In either case, DRV's "release" was tortiously procured.

If the Court finds the first scenario is factually true, i.e., that as a matter of law, PLF effectively made two contractual offers to DRV, then the undisputed facts show that only one of

Page **9** of **17**

those was paid for, so *also* as a matter of law, PLF breached the other. If the Court agrees that the undisputed facts show DRV accepted the Verbal Offer on June 28, 2023, then it is undisputed that PLF did not provide consideration for the release of claims in the Separation of Employment Agreement and that agreement/release is void. Notably, PLF did not oppose DRV's accusation that PLF has repeatedly advanced a sham fact in claiming it paid DRV for a release of claims. See [Doc. 95, at pp. 15-16]. The Court may thus disregard PLF's claim. <u>See</u> <u>Rivera v. Trujillo</u>, 1999-NMCA-129, ¶ 9, 128 N.M. 106, 108, 990 P.2d 219, 221 (a nonmovant will not be allowed to defeat summary judgment by attempting to create a sham issue of fact).

However, in considering PLF's arguments woven throughout the copious briefing in the case *sub judice*, it seems PLF hopes the Court will find the opposite. That is, it seems PLF hopes the Court will find, as a matter of law, that, if there were two contract offers made, PLF paid for the second, i.e., the release of claims. Indeed, that is precisely what PLF once wanted everyone to believe. <u>See</u> Section I, <u>supra</u>. In that circumstance, the Firm breached the Oral Contract by lack of payment. As Plaintiff argues in her contemporaneous Motion on Breach of the Oral Contract, [Doc. 93], if the Oral Contract was breached, then she wants her job back and she seeks back pay for the previous two years. If the Court finds the Oral Contract was paid for, then the release of claims is void for lack of consideration.

**V.        Whether Presented as One or Two Contracts, the *Torrez* Factors, which Were Discussed in the Motion, Weigh in Favor of a Finding that PLF Did Not Obtain the Release Knowingly and Voluntarily, and It Is, Therefore, Void.**

In its Order denying PLF's original request for summary judgment, this Court found at least three of the seven Totality of the Circumstances Test Factors weigh against a finding that DRV waived her claims knowingly and voluntarily. [Doc. 37, at p. 11]. Since that time, additional evidence shows the other factors also weigh in DRV's direction. As an overarching matter, the

evidence does not demonstrate that DRV actually read or understood the "release" document; instead, the Facts show that DRV was so upset and trying not to break down crying that she does not even remember reading the document as Roni Fraire was staring at her after telling her to sign it, send it back , and that she would be disconnected from the system. [Docs. 95 and 117, at UMF Nos. 37-38].

**Factor 1: the clarity and specificity of the release language.** As Plaintiff explained in the Facts, she understood that "this paper" Roni Fraire gave her to sign was simply acknowledging that she was being fired. The release language is neither clear nor specific as it does not define essential terms and makes no mention of the types of "claims" that would be released. That is, even assuming *arguendo* DRV read the document and understood the words on the page, there is no indication that DRV would be releasing a charge of pregnancy employment discrimination with the EEOC or Human Rights Bureau – no language that would have alerted DRV that she was being told to waive all of her legal rights *in order to get paid*. [Docs. 95 and 117, at UMF Nos. 13-16]. Nor does the document define the word "severance" or state that it pertains to DRV's immediate resignation in exchange for six weeks of paid hourly wages.

**Factor 2: the plaintiff's education and business experience.** Contrary to PLF's bald assertion, there is no evidence that DRV had the experience to understand that in a settlement situation, a release would be required. [Doc. 17, at p. 18]. She, in fact, did not. Facts 5-7 (PLF was her first job in the legal field and DRV had no experience working with settlement agreements or releases of claims). While PLF disregards DRV's facts as self-serving, such facts constitute admissible evidence that PLF obviously agrees is material since PLF is the party to have first raised the issue of Plaintiff's sophistication *vel non*. In its very first Motion for Summary Judgment more

than a year and a half ago, it was PLF that first claimed DRV had the experience to expect a release of claims. [Doc. 31, at p. 10, **_March 27, 2024_**]. The undisputed facts show the opposite.

**Factor 3: the amount of time DRV had to deliberate about the release before signing.** The undisputed facts show that in the span of no more than twelve minutes, DRV had the entire conversation with Roni Fraire, was presented with "this paper," was told she "had to sign" it if she wanted "[her] money," and that Roni admits she "did not give her time." As this Court has already stated, "mere minutes[] falls well short of a timeframe that would indicate a knowing and voluntary release." [Doc. 37 citing Elisberg v. Presbyterian Healthcare Services, Inc., No. 05-CV-461 JCH/KBM, 2006 WL8443836, at *8 (D.N.M. Aug. 10, 2006) (finding genuine factual question where plaintiff was told to sign an agreement immediately during a meeting); Riddell v. Med. Inter-Ins. Exch., 18 F. Supp. 2d 468 (D.N.J. 1998) (same); see also Pittman v. Am. Airlines, Inc., No. 14-CV-0728-CVE-FHM, 2015 WL 2354439, at *5 (N.D. Okla. May 15, 2015) (finding that having one day to deliberate raised a factual issue); Bittner v. Blackhawk Brewery and Casino, LLC, No. 03-CV- 02274-MSK-PAC, 2005 WL 1924499, at *4 (D. Colo. Aug. 9, 2005) (finding it unclear whether a weekend was sufficient time for deliberation); Cook v. Buxton, Inc., 793 F. Supp. 622 (W.D. Pa. 1992) (finding ten days insufficient).

**Factor 4: whether DRV knew or should have known her rights upon execution of the release.** PLF says blanketly that, because the Agreement was provided to DRV in the context of the separation of her employment, it was abundantly clear that she was releasing employment claims, but PLF has not provided any evidence to support this assertion. To the contrary, DRV has stated under oath that, at the time she signed the Agreement, she did not have any experience with employment law or with claims of discrimination, retaliation, or the FMLA, and that she did not work with settlement agreements or releases of claims while working at PLF. Facts 5-8. The

undisputed evidence also shows that DRV had asked for time to consider her options the day before, i.e., to educate herself about her rights, and that PLF did not allow her the same. Instead, PLF threatened DRV that the offer might "be pulled" since DRV did not choose her option right away. Why would DRV believe she had the right to take "this paper" home and send it back later after Ms. Fraire's intimidating and threatening manner, words and actions?

**Factor 5**: **whether plaintiff was encouraged to seek, or in fact received benefit of counsel.** Discovery has made clear that PLF did not, at any time, tell Plaintiff to consult with an attorney before signing "this paper." Fact 42 (undisputed by PLF). Moreover, DRV's request for more time to consider the Verbal Offer had been denied, Ms. Fraire stared at DRV while she signed and emailed the document back, and PLF did not tell Plaintiff that she could have more time to consult with an attorney about "this paper."

**Factor 6**: **whether there was an opportunity for negotiation of the terms of the Agreement.** DRV was given no opportunity to negotiate the terms of "this paper," but was instead told by Ms. Fraire that "she had to sign" "this paper" if she wanted "[her] money." While PLF disputes that DRV only had "five minutes" to sign the paper before she was kicked off the system, PLF does not dispute that it was certainly no more than twelve minutes, that Ms. Fraire told Plaintiff to sign this paper and send it back and she was being disconnected from the system. Then Ms. Fraire watched her do the same. See Motion [Doc. 95, at pp. 20-21 (citing UMF Nos. 1, 5-8, 18-22, 28, 30, 35-37)]; see also Response [Doc. 117].

PLF does not dispute that: it *twice* denied DRV's request for more time to give her answer to the ultimatum; PLF could see how DRV felt threatened on June 27, 2023; after DRV conceded to resign, Ms. Friare told her she "was going to send her this paper to be signed and… we were going to be disconnecting her from the system; that Ms. Fraire watched as DRV tried to read the

Page **13** of **17**

Separation of Employment Agreement; nor that DRV was, indeed, kicked off the PLF system about five minutes and sending back the Separation of Employment Agreement. [Docs. 95 and 117, at UMFS 18, 20, 24, 27, 36-37]

**Factor 7: whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.** There are two key points about consideration that PLF simply has not – and cannot – overcome. First, at 9:00am on June 28, 2023, DRV said she would take the second option to immediately resign in exchange for six weeks' paid hourly wages. Then, PLF presented DRV with the waiver. That is, by the time the waiver was presented to DRV, the Firm already had the obligation to give her six weeks of pay based on the Oral Contract. So any alleged six weeks severance that was given as consideration for the waiver was actually already owed by PLF to DRV.

Second, DRV would have received a much greater benefit had she been able to continue working at PLF through the birth of her baby. She would have worked for two more months until her baby was born and then she would have been entitled to receive 8 weeks of paid leave – not the 6 weeks of pay for which PLF tried to get rid of her AND procure a release of liability.

As a side point, had DRV not been deceived into signing a release of claims, she would not face the possibility that the Court or a jury limits her claims against PLF. If her claims against PLF are limited due to the release, then she has received far less benefit than that to which she would otherwise have been entitled.

These factors weigh in favor of a finding that PLF did not obtain the release knowingly and voluntarily.

VI. **DRV Has Established the Agreement Was Signed Under Duress, and PLF Failed to Address This Argument.**

Page **14** of **17**

Oddly, PLF has not addressed DRV's position that the release is voidable because it was signed under duress. DRV has offered sufficient evidence, though, establishing that, through the events of July 27 and 28, 2023, PLF induced her to execute a release that she otherwise would not have signed. See UJI 13-838 NMRA. Indeed, PLF does not dispute many of DRV's key facts supporting DRV's position. First. PLF does not dispute that, when, on June 27, 2023, DRV asked Ms. Fraire for more time to consider the Verbal Offer, Ms. Fraire told her that she could report that DRV wanted more time but could not say that the offer would not "be pulled." Fact 27. Second, PLF testified in its 30(b)(6) deposition that "[it] can see how [DRV] felt threatened" on June 27, 2023, and thought "that [DRV] would probably say, 'I will never be able to meet my metrics. I better take the package.' Further, PLF admitted it didn't think telling DRV she had until July to meet her metrics "would have made any difference whatsoever." See Fact 24.[1]

As described above, PLF's disputation of Fact 30 is baseless. On June 28, 2023, between 9am and 9:12 am, *after* DRV conceded to immediately resign in exchange six weeks' paid hourly wages, PLF told Plaintiff that it "was going to send her this paper to be signed," that Ms. Romero-Valdez would be disconnected from the system, and that "she had to sign if that was the option she was taking." See Fact 30 (citing Fraire Depo, at 236:12-237:20). As demonstrated above, PLF's *post hoc* declaration that Plaintiff could have signed and sent "this paper" later does not make Fact 30 untrue. Moroever, PLF never told Ms. Romero Valdez more time was even an option. [Doc. 94, at Fact 25 (not disputed by PLF)].

The objective, undisputed facts show the "paper" DRV was told she had to sign was not a document evincing her resignation but, instead, was a release of claims – a legal act that was very

---

[1] PLF does not specifically address DRV's UMF No. 24, so the Court may consider it undisputed. Fed.R.Civ.P. 56(e)(2). Moreover, these statements come directly from PLF's 30(b)(6) deposition at the citations included in UMF No. 24 (30(B)(6) Depo, at 178:13-181:22).

different from what had been articulated to DRV as the "offer" the day before. PLF does not dispute this circumstance and in its very first motion to enforce the release, the Firm admitted ***it had subjectively assumed*** that Plaintiff "had the experience to understand that in a settlement situation, a release would be required." [Doc. 31, at p. 10]. And while, admittedly the "consideration" for the Oral Contract and the Second Written Offer look similar, the pressure cooker in which PLF forced DRV to resign looks very different from the deceit enacted upon DRV to abandon her rights with an instruction that she had to sign "this paper" in order to take the resignation option. As a matter of law, this Court can adjudge what happened from undisputed facts that will not change whether under consideration by this Court or by a jury. Even if PLF intended to offer – and offered – only one contract to DRV, PLF admits the Verbal Offer did not contain an essential term. PLF thus surreptitiously and unlawfully secured a release of claims.

In this Motion, DRV asks this Court to find that, based on the undisputed facts, she was pressured and defrauded into unwittingly signing a release of claims and, thus, respectfully asks this Court to grant her Motion for Partial Summary Judgment That the Separation of Employment Agreement is Unenforceable [Doc. 95].

Respectfully submitted,

ADAMS+CROW LAW FIRM

By: */s/  Hannah M. Kohler*
Samantha M. Adams
Hannah M. Kohler
5051 Journal Center Blvd. NE, Suite 320
Albuquerque, New Mexico 87109
Phone: (505) 582-2819
Fax: (505) 212-0439
sam@adamscrow.com
hannah@adamscrow.com
*Attorneys for Dominique Romero-Valdez*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically through the U.S. District Court for the District of New Mexico's CM/ECF filing system on the 16th day of September 2025, which caused all counsel of record to be served via electronic means.

ADAMS+CROW LAW FIRM

By: */s/ Hannah M. Kohler*
      Hannah M. Kohler