IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DOMINIQUE ROMERO-VALDEZ,

    Plaintiff/Counter-Defendant,

v.                                          Case No. 1:23-cv-01084-LF-GJF

PARNALL LAW FIRM, LLC,

    Defendant/Counter-Plaintiff.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Parnall Law Firm, LLC's ("Parnall") Motion for Summary Judgment on Plaintiff's Claims (Doc. 88) and Memorandum in Support of Motion for Summary Judgment on Counts II and III of Second Amended Complaint (Doc. 89).[1] Also before the Court is Ms. Romero-Valdez's Motion for Partial Summary Judgment on Breach of Implied Covenant of Good Faith and Fair Dealing, Fraud, and Pregnancy Discrimination (Doc. 94).

Count II of Ms. Romero-Valdez's Second Amended Complaint ("Breach of Implied Contract") alleges that Parnall "had a duty to honor its policies" regarding "discrimination, retaliation and employment benefits related to FMLA [the Family and Medical Leave Act, 28 U.S.C. § 2615 *et seq.*], Paid Time Off (PTO), and Maternity/Parental Leave." Doc. 27 at 12. This count claims that Parnall breached an implied contract with Ms. Romero-Valdez by using "its superior bargaining position and financial power to deprive [her] of the benefits of its policies

---

[1] Document 88 includes Parnall's Statement of Material Facts for all four of its motions for summary judgment. Document 89 is the argument supporting the Motion for Summary Judgment on Counts II and III.

and procedures." *Id.* at 13. Count III ("Breach of Implied Covenant of Good Faith and Fair Dealing") alleges that Parnall violated the covenant of good faith and fair dealing implied in every contract or agreement by providing Ms. Romero-Valdez a bad-faith ultimatum that "was really a threat of being fired after Ms. Romero-Valdez had indicated she would be taking leave to have her baby," then again acting in bad faith by refusing Ms. Romero-Valdez the opportunity to seek counsel. *Id.* at 14. Additionally, Ms. Romero-Valdez claims that Parnall acted in bad faith by requiring her to sign a general release of claims entitled "Separation of Employment Agreement" as an unexpected component of what she argues was a separate agreement to terminate her employment in exchange for severance pay. *Id.* at 14–15.

This Memorandum Opinion and Order addresses only the parties' dispute regarding Counts II and III of the Second Amended Complaint; the Court therefore rules only in part on Parnall's motion for summary judgment (Doc. 88) and Ms. Romero-Valdez's partial motion for summary judgment (Doc. 94), insofar as those motions address the implied covenant of good faith and fair dealing. It defers ruling on the other arguments in those motions, which will be addressed by separate order.

Having reviewed the parties' submissions and the applicable law, the Court rules on the motions as described below.

## BACKGROUND[2]

Ms. Romero-Valdez began working for Parnall as a medical records assistant in 2021. Undisputed Material Fact ("UMF") No. 3.[3] Her employee handbook stated that her employment was at-will. UMF No. 5. She transitioned roles to the position of legal assistant in July of 2022. UMF No. 16. In late December 2022 and early January 2023, she informed two supervisors that she was pregnant. UMF No. 41. On February 9, 2023, Ms. Romero-Valdez received and acknowledged an updated employee handbook, which stated that her employment was at-will. UMF No. 22.

In mid-June 2023, Ms. Romero-Valdez's supervisors engaged in internal communications suggesting that she failed to open a claim on an important case, UMF Nos. 34–35, and in late June 2023, Ms. Romero-Valdez was presented with an ultimatum: "either stay working here and give us your 100 percent, but you could be fired at any time for any reason, or you can take the six-week paid leave and leave effective immediately," UMF No. 55. The next morning, Ms. Romero-Valdez informed her supervisor that she would take the six weeks of pay and leave her employment. UMF No. 57; Doc. 34-1 at 5, ¶ 38; Doc. 93 at 6–7, ¶¶ 7, 8. Ms. Romero-Valdez was given a paper to be signed entitled, "Separation of Employment Agreement." UMF No. 58; Doc 118 at 15; Doc. 31-2. The paper included a statement that "I will not bring any claim,

---

[2] Ms. Romero-Valdez's response to Parnall's recitation of facts includes three categories of response: admit (or partially admit), dispute (or partially dispute), and "unsupported fact," which means that Ms. Romero-Valdez believes that Parnall's cited evidence "does not support the asserted fact." Doc. 118 at 2. The Court has attempted in this brief recitation of facts to include only facts that are not labeled "disputed." For any disputed of allegedly unsupported facts, the Court cites to the underlying exhibits and other materials in the record, as necessary. *See* FED. R. CIV. P. 56(c)(3) ("The court need only consider the cited materials, but it may consider other material in the record.").

[3] The UMFs are contained in Document 88 at pages 3 through 22.

lawsuit or charges against Parnall or any owner, agent or employee, for any reason." Doc. 31-2. Ms. Romero-Valdez signed the paper. UMF No. 58; Doc. 34-1 at 6, ¶ 49.

## LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and a 'genuine' issue exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Occusafe, Inc. v. EG&G Rocky Flats, Inc.*, 54 F.3d 618, 621 (10th Cir. 1995) (citation omitted).

## DISCUSSION

Parnall has moved for summary judgment in its favor on Count II. The parties have filed cross-motions for summary judgment on Count III. The Court addresses each in turn, organized first by which count they address.

### I.    Count II: Breach of Implied Contract

Parnall argues that Ms. Romero-Valdez was aware that she was an at-will employee and that nothing in the employee handbook changed that fact. Doc. 89 at 3–4. It also argues that Ms. Romero-Valdez's breach of implied contract claim with regard to legal benefits such as FMLA and anti-discrimination protections is preempted by the FMLA itself, Title VII, and the New Mexico Human Rights Act, which contain their own provisions for handling violations. *Id.* at 4–5.

Ms. Romero-Valdez responds, "There was an implied agreement that [Parnall] would terminate [Ms. Romero-Valdez's] employment truthfully and compassionately, but it did not do so." Doc. 119 at 1. She argues that the handbook emphasized the "core values" of honesty,

4

integrity, and compassion, but Parnall conducted Ms. Romero-Valdez's termination in a "manipulative manner," unlike its treatment of other employees, and it was dishonest with Ms. Romero-Valdez about the reason she was fired. *Id.* at 2–3. She claims that "considering the surrounding circumstances, a jury could find that an implied contact existed" for Parnall to terminate her honestly and compassionately. *Id.* at 3–4. Parnall replies that in the context of employment, the law of implied contracts in New Mexico relates to alterations of the at-will employment relationship, and that an implied agreement for Parnall to terminate Ms. Romero-Valdez's employment truthfully and compassionately does not state a valid claim for breach of implied contract. Doc. 128 at 2.

"Under New Mexico law a policy manual which also expressly states employment is terminable at will does not create an expectation of an implied contract." *Sullivan v. Am. Online, Inc.*, 219 F. App'x 720, 723 (10th Cir. 2007) (citing *Paca v. K-Mart Corp.*, 1989-NMSC-034, ¶ 9, 108 N.M. 479, 481, 775 P.2d 245, 247). That is, the manual "instill[s] no reasonable expectations of job[] security," and "even assuming" a company fails to follow the policies it includes in a handbook, the "handbook read as a whole [including the statement that employment was at will] undermines any claim that" the plaintiff "reasonably understood her at-will status was impliedly altered" by the policies included in the manual. *Id.* (citations omitted). Thus, Ms. Romero-Valdez had no reasonable understanding that her at-will employment status was altered—in other words, that any special conditions attached to Parnall's ability to terminate her employment beyond the general law of at-will employment.

Nor do the manual's policies on discrimination, retaliation, maternity and parental leave, paid time off, and FMLA leave establish an implied contract.[4] "Claims of discrimination are preempted by Title VII and the [New Mexico] Human Rights Act, both of which contain statutory schemes that provide specific rights and remedies that are exclusive . . . . Plaintiff cannot re-package discrimination claims as implied contract claims."). *Montano v. Pub. Serv. Co. of N.M.*, No. 1:14-cv-00079-WJ-SCY, 2014 WL 11430952, at *3 (D.N.M. July 16, 2014); *see also Jaramillo v. J.C. Penney Co., Inc.*, 1985-NMCA-002, ¶ 3, 102 N.M. 272, 273, 694 P.2d 528, 529 (comprehensive nature of New Mexico Human Rights Act renders its grievance procedure "mandatory when unlawful discriminatory practices are alleged"). The FMLA also has a provision preventing employers from interfering with an employee's exercise of FMLA rights. 29 U.S.C. § 2615(a)(1); *see also Sabourin v. Univ. of Utah*, 676 F.3d 950, 957 (10th Cir. 2012). Under the same logic as that employed in *Montano* and *Jaramillo*, the Court concludes that the FMLA preempts contract suits for interference with FMLA benefits. As for any implied contract regarding Ms. Romero-Valdez's maternity and parental leave or paid time off accrued through her employment contract (as distinct from statutory leave such as FMLA), these arguments too rely on pregnancy discrimination. That is, the issue is whether Ms. Romero-Valdez was fired, depriving her of the benefits of her employment contract, *because* she intended to use the benefits for the period following the birth of her child. Therefore, they are preempted by Title VII and the New Mexico Human Rights Act.

For the above reasons, the Court GRANTS Parnall's partial motion for summary judgment (Doc. 89) as it pertains to Count II.

---

[4] Ms. Romero-Valdez does not address this argument in her response, but the Court nonetheless discusses it for completeness.

## II.  Count III: Breach of Implied Covenant of Good Faith and Fair Dealing

### A. Parnall's Motion (Doc. 89)

Parnall's argument with regard to Count III is simple: "In New Mexico . . . the implied covenant of good faith and fair dealing does not attach to an at-will employment relationship." Doc. 89 at 7 (citing *Melnick v. State Farm Mut. Auto. Ins. Co.*, 1988-NMSC-012, ¶ 13, 106 N.M. 726, 730, 749 P.2d 1105, 1109). It argues that because Ms. Romero-Valdez was an at-will employee, her employer could not have violated the covenant of good faith and fair dealing as a matter of law. *Id.* Ms. Romero-Valdez responds that the issue central to this claim is not her termination itself, but that Parnall "surpris[ed] her with a required release of claims *after* she conceded to resign, whilst not allowing her the opportunity to seek counsel." Doc. 119 at 4.

Count III alleges a breach of the implied covenant of good faith and fair dealing in three instances: First, it alleges that Parnall "gave Ms. Romero-Valdez a false choice *in bad faith* of taking six weeks of paid leave if she resigned immediately rather than facing imminent termination without any pay at all." Doc. 27 at 14 ¶ 76 (i.e., the ultimatum). Second, Parnall "then refused *in bad faith* Ms. Romero-Valdez her right to seek counsel." *Id.* And finally, Parnall added the requirement that Ms. Romero-Valdez sign a release of claims to the preexisting oral contract of voluntary resignation for six weeks of severance pay. *Id.* at 14 ¶ 77. The Court will address the legal background and relevant case law before considering how it applies to each of these instances.

The implied covenant of good faith and fair dealing is a rule of contract interpretation: "Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement." *Watson Truck & Supply Co., Inc. v. Males*, 1990-NMSC-105, ¶ 12, 111 N.M. 57, 60, 801 P.2d 639, 642. In *Melnick*, the plaintiff's contract with his at-will

7

employer was terminated and he was fired, which he argued was a violation of the implied covenant of good faith and fair dealing. 1988-NMSC-012, ¶¶ 1–2, 106 N.M. at 727, 749 P.2d at 1106. The New Mexico Supreme Court concluded, "[W]e do not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in an at-will employment relationship." *Id.* ¶ 13, 106 N.M. at 730, 749 P.2d at 1109. It emphasized the importance of an employee and employer both being able to terminate an at-will employment contract "at any time, for any reason, without liability," except in instances of retaliatory discharge or violation of an implied contract. *Id.* ¶ 14, 106 N.M. at 730, 749 P.2d at 1109. But, "[a]lthough an employer may agree to restrict or limit his right to discharge an employee, to imply such a restriction in an employment-at-will relationship, which by its very nature has no restrictions, is inherently unsound." *Id.* ¶ 19, 106 N.M. at 732, 749 P.2d at 1111. To maintain the "continued vitality of the employment-at-will doctrine," the Court held that "in the absence of a showing of improper motivation, overreaching, or discharge for a reason contrary to public policy, Melnick was not entitled to a showing of good cause or an absence of bad faith before State Farm could terminate his agency." *Id.* ¶ 21, 106 N.M. at 732, 749 P.2d at 1111.

To be clear, then, *Melnick* addressed the question of whether the implied covenant of good faith and fair dealing attached to the *termination* of an at-will employment contract. *See* N.M. UJI 13-832 ("If there is an at-will employment relationship, there is no covenant of good faith and fair dealing regarding termination[.]"). The Court concluded that an employer who fired an at-will employee did not need to demonstrate good cause for that decision because at-will employment inherently allows terminations for any lawful reason—not just a "good" reason.

This holding applies squarely to the first instance Ms. Romero-Valdez raises in her complaint: the allegedly bad-faith ultimatum which was actually a threat to fire her if she did not

8

take Parnall's offer. Under *Melnick*, there is no implied covenant of good faith and fair dealing in terminating an at-will employee. That is, again, an employer need not have a good reason to fire an at-will employee. Parnall's decision to offer Ms. Romero-Valdez an ultimatum rather than fire her outright is not a violation of the covenant of good faith and fair dealing, *even if* it was done to disguise a threat to fire her in violation of public policy. "[I]n the at-will employment setting the claim of retaliatory discharge for violation of a clear mandate of public policy may be assessed in tort, not breach of the implied covenant." *Kropinak v. ARA Health Servs., Inc.*, 2001-NMCA-081, ¶ 13, 131 N.M. 128, 131, 33 P.3d 679, 682. Within the scope of contract law, as distinct from tort law, Parnall's decision to fire its at-will employee is not a problem—and it is within contract law that the implied covenant of good faith and fair dealing resides. Therefore, the Court will GRANT summary judgment in Parnall's favor with regard to the component of Count III that addresses the ultimatum.

The other two components of Count III, however, are separate. They do not challenge the termination of an at-will employment contract; rather, they challenge Parnall's conduct with regard to its severance agreement with Ms. Romero-Valdez. Through the lens of the covenant of good faith and fair dealing, Parnall could have terminated Ms. Romero-Valdez's employment contract outright, but it did not. It chose to provide her a separate offer—leave now with severance, or stay but risk termination later. This is a separate matter from the basic at-will, work-for-pay arrangement of an employment contract, which Parnall had the legal right to end at any time.[5] In this separate severance-related contract, Ms. Romero-Valdez alleges, Parnall strongarmed or tricked her into agreeing to release it from liability without allowing her time to

---

[5] To be clear, the parties dispute whether this separate offer ultimately ballooned into two offers. *See* Doc. 37. But, critically, the agreement or agreements regarding severance pay is/are not the same contract as Ms. Romero-Valdez's original at-will employment as a legal assistant.

9

contact an attorney and by sneaking a release into what she thought was merely a separation agreement. This conduct is distinct from the completely at-will employment contract discussed in *Melnick*, and *Melnick* does not support summary judgment in favor of Parnall on Count III.[6]

Incorporated by reference in Parnall's reply is Doc. 115, its Response to Motion for Partial Summary Judgment Against Parnall Law for Breach of Oral Contract. Doc. 128 at 4–5.[7] In Document 115, Parnall argues that "even if its presentation of the Separation of Employment Agreement terms was perhaps clumsy, Plaintiff reviewed and agreed to those terms in order to receive her severance payment." Doc. 115 at 2. That is, Parnall argues that because Ms. Romero-Valdez agreed to the terms, the severance contract was "one deal done." *Id.* This argument is inapposite: certainly, Ms. Romero-Valdez agreed to the contract, but a dispute nonetheless exists regarding whether Parnall's conduct—in refusing Ms. Romero-Valdez time to consult with counsel and including a release of claims in the agreement when a release of claims was not discussed in conjunction with the oral offer—violated the covenant of good faith and fair dealing.

---

[6] Parnall also makes an argument that even if Ms. Romero-Valdez was not an at-will employee, her good faith and fair dealing argument still would fail. However, Ms. Romero-Valdez does not address this argument, presumably because she agrees that she was an at-will employee. UMF No. 22; *see also* Doc. 118 at 7–8 (admitting that Ms. Romero-Valdez's February 9, 2023, updated employee handbook stated that her employment with Parnall was at-will).

[7] The Court suspects that Parnall intended to incorporate a different document by reference: Document 116 at 12, which discusses the implied covenant of good faith and fair dealing more thoroughly. There, Parnall argues as follows: Ms. Romero-Valdez claims that the terms of the Separation of Employment Agreement are not enforceable. If the Agreement is not enforceable, then the implied covenant of good faith and fair dealing, which attaches to that agreement, could not have been breached. *Id.* In essence, if a valid and enforceable contract never came into being, the attendant covenant of good faith and fair dealing also could not have come into being. The Court addresses this argument below when it discusses Ms. Romero-Valdez's motion for summary judgment in her favor on the good faith and fair dealing claim.

The Court therefore DENIES Parnall's motion for summary judgment on Count III with respect to the issues of Ms. Romero-Valdez's access to an attorney and the inclusion of the release of claims in the separation agreement.

### B. Ms. Romero-Valdez's Motion (Doc. 94)

In a separate motion, Ms. Romero-Valdez argues for summary judgment in *her* favor on the good faith and fair dealing claim. Doc. 94 at 8–9. She argues that Parnall acted in bad faith by, essentially, sneaking the release of claims into the written separation agreement when a release of claims was not a component of the original, oral separation agreement. *Id.* at 7–8. She also argues that Parnall prevented her from consulting with an attorney. *Id.* at 9.

In response, Parnall argues as follows: Ms. Romero-Valdez claims that the terms of the Separation of Employment Agreement are not enforceable. If the Agreement is not enforceable, then the implied covenant of good faith and fair dealing, which attaches to that agreement, could not have been breached. Doc. 116 at 12. In essence, if a valid and enforceable contract never came into being, the attendant covenant of good faith and fair dealing also could not have come into being. This is true. *See Azar v. Prudential Life Ins. Co. of Am.*, 2003-NMCA-062, ¶ 53, 133 N.M. 669, 685, 68 P.3d 909, 925 ("Because the implied covenant of good faith and fair dealing depends upon the existence of an underlying contractual relationship, Plaintiffs may not recover under the theory for omissions occurring before the existence of the policy."). However, it is not yet established whether a valid contract to waive Ms. Romero-Valdez's claims existed (Doc. 37), and it also is not yet established whether a contract existed for Ms. Romero-Valdez to resign her position in exchange for six weeks' wages or whether she resigned voluntarily for no consideration. *Compare* Doc. 94 at 9 *and* Doc. 93-4 at 42, lines 164:11–165:1, *with* Doc. 94 at 7 *and* Doc. 93-3 at 11–12. Given the Court's denial of summary judgment on these issues earlier in

this litigation (Doc. 37), a jury will decide these questions. If a jury determines that a valid contract exists, then the implied covenant of good faith and fair dealing attached to that contract, and the jury may decide whether the implied covenant of good faith and fair dealing was breached.

Because of the dispute over what contract(s) existed and for what consideration, the good faith and fair dealing question cannot be resolved without the jury's input. The Court therefore DENIES summary judgment on Count III.

## CONCLUSION

The Court GRANTS IN PART AND DENIES IN PART Parnall's partial motion for summary judgment (Doc. 89). It grants summary judgment in Parnall's favor on Count II (implied contract) in its entirety. It grants summary judgment in Parnall's favor on the component of Count III (good faith and fair dealing) that pertains to the issuances of an ultimatum, but it denies summary judgment (to both sides) on the rest of Count III, which addresses the inclusion of the release of claims in the separation agreement and the decision not to allow Ms. Romero-Valdez the opportunity to consult with an attorney.

The Court DENIES IN PART Ms. Romero-Valdez's partial motion for summary judgment (Doc. 94) as it pertains to the implied covenant of good faith and fair dealing and DEFERS the rest of the motion to be addressed by separate order.

It is so ordered.

_____
LAURA FASHING
UNITED STATES MAGISTRATE JUDGE