## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DOMINIQUE ROMERO-VALDEZ,

      Plaintiff/Counter-Defendant,

v.                                   Case No. 1:23-cv-01084-LF-GJF

PARNALL LAW FIRM, LLC,

      Defendant/Counter-Plaintiff.

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Parnall Law Firm, LLC's ("Parnall") Motion for Summary Judgment on Plaintiff's Claims (Doc. 88) and Memorandum in Support of Motion for Summary Judgment on Counts IX, X, and XII of Second Amended Complaint (Doc. 91).[1] Ms. Romero-Valdez opposes this motion. Doc. 121.

Also before the Court are three partial summary judgment motions by Ms. Romero-Valdez: 1) Motion for Partial Summary Judgment Against Parnall Law Firm for Breach of Oral Contract (Doc. 93); 2) Motion for Partial Summary Judgment on Breach of Implied Covenant of Good Faith and Fair Dealing, Fraud, and Pregnancy Discrimination (Doc. 94); and 3) Motion for Partial Summary Judgment that the Separation of Employment Agreement is Unenforceable (Doc. 95). Parnall opposes each of these motions. Docs. 116, 117, 118. The Court denies both parties' motions as discussed below.

---

[1] Document 88 includes Parnall's Statement of Material Facts for all four of its motions for summary judgment. Document 91 is the argument supporting the Motion for Summary Judgment on Counts IX, X, and XII.

Count IX alleges breach of contract. Doc. 27 at 22. Ms. Romero-Valdez alleges that there were two offers: one, an oral offer to be paid six weeks of paid leave in exchange for Ms. Romero-Valdez's voluntary resignation, which she accepted and for which she received payment, and two, a written offer for (in relevant part) a release of claims in exchange for "severance pay of six weeks at her regular hourly rate." *Id.* at 23. She alleges that her decision to sign the second, written offer was not voluntary because Ms. Fraire "intentionally misrepresented" to her that the offer had to be signed as part of the first, oral contract, and because it was misleadingly titled "Separation of Employment Agreement" when it was in fact a general release of claims. *Id.* She argues that even if a jury finds that she voluntarily agreed to the second, written offer such that it became a binding contract, she was not paid the consideration of six weeks of her hourly rate as severance pay. *Id.* She was only paid six weeks of paid leave in accordance with the terms of the first, oral contract to which she agreed. *Id.* Because she claims that she was never paid consideration for the second contract, she claims that it was breached, and accordingly, seeks recission of the contract (i.e., not to be bound by her release of claims). *Id.* at 24.

Count X alleges fraud. *Id.* Ms. Romero-Valdez alleges that Ms. Fraire defrauded her "by suggesting that the agreement Ms. Romero-Valdez 'had to sign' was memorializing a contract for immediate resignation that Ms. Fraire had initiated the day before," i.e., the oral contract, when in reality the written document was a second, separate contract for a release of legal claims. *Id.* at 25. "It was not true that the Second Offer of June 28, 2023, which contained a surprise release of legal claims, had to be signed as part of the June 27, 2023 contractual terms." *Id.* Ms. Romero-Valdez alleges that she relied on this false statement to her detriment. *Id.* at 26.

Count XII seeks a declaratory judgment that 1) "she has not released any claims against Defendant Parnall Law Firm and that she may pursue legal and equitable relief, including

attorney's fees and costs, and for other relief this Court deems just and proper," and 2) "Defendant Parnall Law Firm violated the New Mexico Healthy Workplaces Act, FMLA, the New Mexico Human Rights Act, Title VII, and the Pregnancy Discrimination Act." *Id.* at 29.

This Memorandum Opinion and Order addresses only the parties' dispute regarding Counts IX, X, and XII of the Second Amended Complaint. The Court therefore rules only in part on Parnall's motion for summary judgment (Doc. 88) and Ms. Romero-Valdez's partial motion for summary judgment (Doc. 94) in this Memorandum Opinion and Order.[2] However, the portions addressed in this Memorandum Opinion and Order are the final claims in these motions so the motions are now completely resolved.

## BACKGROUND[3]

Ms. Romero-Valdez began working for Parnall as a medical records assistant in 2021. Undisputed Material Fact ("UMF") No. 3.[4] Her employee handbook stated that her employment was at-will. UMF No. 5. She transitioned roles to the position of legal assistant in July of 2022. UMF No. 16. In late December 2022 and early January 2023, she informed two supervisors that she was pregnant. UMF No. 41. On February 9, 2023, Ms. Romero-Valdez received and

---

[2] Ms. Romero-Valdez's partial motion for summary judgment has been addressed in part as it pertained to the implied covenant of good faith and fair dealing and pregnancy discrimination. *See* Docs. 145, 149. This Memorandum Opinion and Order resolves the last claim in that motion, fraud.

[3] Ms. Romero-Valdez's response to Parnall's recitation of facts includes three categories of response: admit (or partially admit), dispute (or partially dispute), and "unsupported fact," which means that Ms. Romero-Valdez believes that Parnall's cited evidence "does not support the asserted fact." Doc. 118 at 2. The Court has attempted in this brief recitation of facts to include only facts that are not labeled "disputed." For any disputed or allegedly unsupported facts, the Court cites to the underlying exhibits and other materials in the record, as necessary. *See* FED. R. CIV. P. 56(c)(3) ("The court need only consider the cited materials, but it may consider other material in the record.").

[4] The UMFs are contained in Document 88 at pages 3 through 22.

acknowledged an updated employee handbook, which stated that her employment was at-will. UMF No. 22.

In mid-June 2023, Ms. Romero-Valdez's supervisors engaged in internal communications suggesting that she failed to open a claim on an important case, UMF Nos. 34–35, and in late June 2023, supervisor Ms. Fraire presented Ms. Romero-Valdez with an ultimatum: "either stay working here and give us your 100 percent, but you could be fired at any time for any reason, or you can take the six-week paid leave and leave effective immediately," UMF No. 55. The next morning, Ms. Romero-Valdez informed Ms. Fraire that she would take the six weeks of pay and leave her employment. UMF No. 57; Doc. 34-1 at 5, ¶ 38; Doc. 93 at 6–7, ¶¶ 7, 8. At or shortly after 9:00 a.m., Ms. Fraire emailed Ms. Romero-Valdez a paper to be signed entitled, "Separation of Employment Agreement." UMF No. 58; Doc. 118 at 15; Doc. 31-2; Doc. 88-2 at 29, 194:20–195:5. Ms. Fraire stated in her deposition, "I did tell [Ms. Romero-Valdez] I was going to send her this paper to be signed and I did tell her we were going to be disconnecting her from the system." Doc. 93-6 at 60, 237:5–7. She also stated, "I did tell her she had to sign it if that's the option she was taking. I said, 'We have something we would like you to sign so we can give you your money.'" *Id.* at 60, 237:13–16. The paper included a statement that said, "I will not bring any claim, lawsuit or charges against Parnall or any owner, agent or employee, for any reason." Doc. 31-2. Ms. Romero-Valdez signed the paper at 9:12 a.m. UMF No. 58; Doc. 34-1 at 6, ¶ 49; Doc. 88-2 at 29, 194:20–195:5.

## LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing

law,' and a 'genuine' issue exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Occusafe, Inc. v. EG&G Rocky Flats, Inc.*, 54 F.3d 618, 621 (10th Cir. 1995) (citation omitted).

## DISCUSSION

Parnall argues that it is entitled to summary judgment on Counts IX, X, and XII. Doc. 91. Ms. Romero-Valdez argues that she is entitled to summary judgment on Counts IX and X. Docs. 93, 94. The Court addresses the counts in numerical order.

### I.    Count IX (Breach of Contract and Recission)

Parnall argues that Ms. Romero-Valdez's "two contracts" theory "is not reasonable" and that "[a]s part of receiving the severance, which was referenced in the Separation Agreement, Parnall Law asked Plaintiff to sign the Separation Agreement, and she did," as one transaction and for a single agreed-upon consideration. Doc. 91 at 2. Ms. Romero-Valdez responds that Parnall "made *no mention whatsoever* about a release of claims until *after* [Ms. Romero-Valdez] accepted the verbal offer to resign in exchange for six weeks' wages," that "[a] contract cannot be based upon [Parnall's] *subjective* intent," and that the different terms of the two contracts and separate timing of the two offers render them separate agreements. Doc. 121 at 2–3.

Under New Mexico law, the formation of a valid contract requires the party seeking enforcement to demonstrate that the contract is "factually supported by an offer, an acceptance, consideration, and mutual assent." *Strausberg v. Laural Healthcare Providers, LLC*, 2013-NMSC-032, ¶ 42, 304 P.3d 409, 419–20. An offer "is a communication of willingness to enter into a contract," with the "material terms" of the proposal being "reasonably certain" and those terms "hav[ing] been communicated to" the offeree in such a manner that the offeror intends to give the offeree "the power to create a contract by accepting the terms." *Tyler Grp. Partners,*

*LLC v. Madera*, 564 F. Supp. 3d 944, 997 (D.N.M. 2021). Acceptance may be "express or implied by conduct"—express, by a "clear, positive, and unambiguous" communication of assent, or implied by conduct at "the beginning of invited performance." *DeArmond v. Halliburton Energy Servs., Inc.*, 2003-NMCA-148, ¶ 11, 134 N.M. 630, 635, 81 P.3d 573, 578. Consideration is "the bargained-for exchange between the parties": something "sought by the promisor in exchange for his promise and . . . given by the promisee in exchange for that promise." *Smith v. Village of Ruidoso*, 1999-NMCA-151, ¶ 33, 128 N.M. 470, 478, 994 P.2d 50, 58. Finally, mutual assent is "a showing of agreement by the parties to the material terms of the contract"—a "meeting of the minds" or objective manifestation of mutual agreement. *Myers v. Papa Tex., LLC*, 749 F. Supp. 3d 1165, 1174 (D.N.M. 2024) (citation omitted). "Mutual assent is based on objective evidence, not the private, undisclosed thoughts of the parties." *Garcia v. Sonoma Ranch East II, LLC*, 2013-NMCA-042, ¶ 17, 298 P.3d 510, 516 (citation omitted). "Unexpressed intentions or understandings of the parties will not be given operative effect in deciding what the parties agreed to." *Myers*, 749 F. Supp. 3d at 1174 (citation omitted).

Normally, the existence of a contract is a question of law, and the trial court would decide whether all the steps required for contract formation occurred. *Garcia v. Middle Rio Grande Conservancy Dist.*, 1983-NMCA-047, ¶ 22, 99 N.M. 802, 807, 664 P.2d 1000, 1005, *overruled on other grounds by Montoya v. AKAL Sec., Inc.*, 1992-NMSC-056, 114 N.M. 354, 838 P.2d 971. However, "when the existence of a contract is at issue and the evidence is conflicting or admits of more than one inference, it is for the jury to determine whether the contract did in fact exist." *Segura v. Molycorp, Inc.*, 1981-NMSC-116, ¶ 24, 97 N.M. 13, 18, 636 P.2d 284, 289; *see also* NM UJI 13-801.

The evidence in this case allows for multiple, conflicting inferences. In Ms. Romero-Valdez's view, Ms. Fraire presented Ms. Romero-Valdez with an initial offer (to resign in exchange for six weeks' pay), Ms. Romero-Valdez accepted the offer the next day, the consideration was a voluntary resignation in exchange for payment, and the two women mutually assented through their spoken words. Then, separately, Ms. Fraire presented Ms. Romero-Valdez with a second offer (to release any claims against Parnall, among other things, in exchange for a separate payment of six weeks' pay), Ms. Romero-Valdez accepted by signing the paper, the consideration was a release of claims (among other things) in exchange for payment, and the two women mutually assented through their written words and signature. Alternatively, in Parnall's view, the spoken communications between Ms. Fraire and Ms. Romero-Valdez were discussions about what a potential contract would contain, not offers or acceptances themselves. The complete offer was contained in the written document (to resign and release claims in exchange for a single payment of six weeks' pay), Ms. Romero-Valdez accepted the offer by signing it, the consideration was a release of claims *and* resignation in exchange for payment, and the two women mutually assented through their written words and signature.

Because the evidence in this case permits multiple inferences, the question of whether a contract was formed is one for the jury. The Court DENIES both Parnall's and Ms. Romero-Valdez's motions for summary judgment as pertaining to Count IX.

## II.    Fraud (Count X)

Ms. Romero-Valdez argues that Parnall's failure to disclose the fact that it would require Ms. Romero-Valdez to release her claims as part of the severance offer was fraudulent. "When making the Verbal Offer, Ms. Fraire knew [Parnall] intended to require Ms. Romero-Valdez to release her claims, but did not disclose this information to Ms. Romero-Valdez until *after* Ms.

Romero-Valdez already conceded to resign." Doc. 94 at 10. Separately, Ms. Romero-Valdez also argues that Parnall's failure to explain the nature of the written agreement, which it just called "this paper" and which was labeled as a separation of employment agreement, but which actually contained a release of claims, constituted fraud. Doc. 134 at 10. Parnall argues that there was no fraud in these interactions. Doc. 91 at 2; Doc. 116 at 13.

"The elements of fraud include (1) a misrepresentation of fact, (2) either knowledge of the falsity of the representation or recklessness on the part of the party making the misrepresentation, (3) intent to deceive and to induce reliance on the misrepresentation, and (4) detrimental reliance on the misrepresentation." *Williams v. Stewart*, 2005-NMCA-061, ¶ 34, 137 N.M. 420, 429, 112 P.3d 281, 290. Fraud can be accomplished via false statement or by omission when a party has a duty to disclose information. *Heimann v. Kinder-Morgan CO2 Co., L.P.*, 2006-NMCA-127, ¶ 17, 140 N.M. 552, 558, 144 P.3d 111, 117; *see also Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 275 (2013) ("'Fraud' typically requires a false statement or omission."). A duty to disclose "may arise if there is knowledge that the other party is acting under a mistaken belief or if one has superior knowledge not within the reach of the other party or which could not have been discovered by the exercise of reasonable diligence." *Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, ¶ 60, 133 N.M. 669, 687–88, 68 P.3d 909, 927–28 (describing holding of another case).

Here, the question of fraud depends on the underlying contractual issue. *If* there was only one contract, discussed orally but ultimately accepted and formed via signature of the Separation of Employment Agreement, then no fraud took place in the oral portion of the interaction. The discussion was not a binding agreement, so the failure to discuss the forthcoming written release of claims was not fraudulent; rather, the final form of the agreement included the release written

in plain language that Ms. Romero-Valdez read and agreed to by signing the document. Nor did fraud take place when Ms. Fraire stated that Ms. Romero-Valdez had to sign the written agreement in order to receive her severance payment: if there was only one agreement, with resignation and release of claims together exchanged for a sum of money, then Ms. Fraire's statement was true.

As for Parnall's decision to present the Separation of Employment Agreement as "this paper" and its failure to indicate in the title that it contained a release of claims, a reasonable jury could decide for either party on the fraud issue. Again, if the oral conversations were merely a nonbinding discussion and the actual contract was purely a written one, Ms. Romero-Valdez was capable of reading the paper, which was short and plainly written, before signing it. Parnall's superior knowledge did not necessarily trigger a duty to disclose the legal implications of the written agreement if Ms. Romero-Valdez knowingly agreed to the terms of the written agreement. And even earlier, when the discussions were taking place and a release of claims was not explicitly discussed, no fraud took place because those discussions were nonbinding; her oral agreement to resign was an expression of *intention* to agree to the written contract, not a binding acceptance that trapped her before she knew the full story. She could have declined to sign the written contract without being obligated to resign. In contrast, a reasonable jury could find that the written agreement was presented in a high-pressure situation with minimal time to read the contractual language, no time at all to consult an attorney, and a title that did not accurately convey the important rights Ms. Romero-Valdez would surrender by signing the document. Ms. Fraire's reference to the document as a "paper" similarly failed to express the full legal scope of the contract. These contextual elements could lead a reasonable jury to determine that the

innocuous title of the document and Ms. Fraire's reference to it only as a "paper" were misstatements and/or omissions of material fact sufficient to constitute fraud.

If, however, there were two contracts, the analysis takes a different shape. Ms. Fraire testified as follows: "I did tell [Ms. Romero-Valdez] she had to sign [the paper] if that's the option she was taking. I said, 'We have something we would like you to sign so we can give you your money.'" Doc. 93-6 at 60, 237:13–16. Ms. Fraire's statement that Ms. Romero-Valdez was required to sign the written agreement before receiving her money (i.e., that the written agreement was required to effectuate the already-binding oral agreement) was a lie that induced Ms. Romero-Valdez to surrender her right to sue. Further, calling the written agreement "this paper" and failing to indicate that it contained a release of claims could be viewed as a material omission that induced Ms. Romero-Valdez to sign the paper without reading it or fully understanding it, and without time to consult a lawyer to assist her.

Accordingly, because the issue of whether one or two contracts existed is one that the jury must decide, and because that issue is inextricably intertwined with the fraud issue, the Court DENIES both Parnall's and Ms. Romero-Valdez's motions for summary judgment on Count X.

## III.    Declaratory Judgment (Count XII)

Ms. Romero-Valdez seeks declaratory judgment on two issues: 1) "that she has not released any claims against Defendant Parnall Law Firm," and 2) "that Defendant Parnall Law Firm violated the New Mexico Healthy Workplaces Act, FMLA, the New Mexico Human Rights Act, Title VII, and the Pregnancy Discrimination Act." Doc. 27 at 29. The Court has declined to grant summary judgment in her favor on any of her claims. *See* Docs. 145, 149, 169. The Court has granted summary judgment in Parnall's favor on Ms. Romero-Valdez's New Mexico Healthy

Workplaces Act claim (Count V) and has denied Parnall's motion for summary judgment on Ms. Romero-Valdez's FMLA (Count IV), New Mexico Human Rights Act (Count VI), Title VII (Count VI), and Pregnancy Discrimination Act (Count VI) claims. Therefore, the Court will not grant Ms. Romero-Valdez's motion for declaratory judgment on the second category of issues above because those issues are reserved for the jury to determine.

As for Ms. Romero-Valdez's alleged release of claims, Parnall seeks summary judgment on Count XII simply on the basis that Count XII "is essentially a defense to the enforcement of the [Separation of Employment Agreement] and not an affirmative claim." Doc. 91 at 3. Ms. Romero-Valdez responds that an actual controversy exists between her and Parnall regarding the written separation agreement. Doc. 121 at 7. Parnall's reply reiterates its argument that there was only one contract, not two, and states that Ms. Romero-Valdez has not proven that the separation agreement is unenforceable. Doc. 130 at 2.

The enforceability discussion comes secondary to the question of whether declaratory judgment is applicable at all. The New Mexico Declaratory Judgment Act, N.M. STAT. ANN. § 44-6-2, states, "In cases of actual controversy, district courts within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed." "A case of actual controversy exists only where a plaintiff satisfies justiciability requirements," such as ripeness, mootness, and injury-in-fact. *Am. Fed. of State v. Bd. of Cnty. Comm'rs of Bernalillo Cnty.*, 2016-NMSC-017, ¶ 15, 373 P.3d 989, 993. The issue of whether Ms. Romero-Valdez has surrendered her right to bring claims against Parnall certainly is ripe—she brings such claims in the other counts of the present suit—and is not moot, as it remains hotly disputed between the parties and both parties still have an interest in the outcome. Ms. Romero-Valdez also claims a cognizable injury-in-fact: the loss of her right to sue based on

a contract she argues is not legally binding. Based on the Court's review, an actual controversy does exist regarding the validity of the written separation agreement, and declaratory judgment therefore may be considered.

However, declaratory judgment is not appropriate here. As discussed above, it is for a jury to determine whether one contract or two contracts existed in this case. The question of whether Ms. Romero-Valdez validly agreed to the contract(s) in this case or agreed only under duress, and the question of what portion(s) of any agreement(s) Parnall's consideration supported, both depend inextricably on whether one or two contracts existed. Therefore, the validity of the release of claims depends on disputed issues of material fact and must be determined by a jury.

**CONCLUSION**

The Court DENIES Parnall's partial motion for summary judgment with regard to Counts IX, X, and XII (Doc. 91). The Court DENIES Ms. Romero-Valdez's motion for summary judgment as pertaining to Count IX (Doc. 93). The Court DENIES Ms. Romero-Valdez's motion for summary judgment as pertaining to Count X (Doc. 94). The other components of Doc. 94 have been denied by separate orders, now resulting in a complete denial of the motion. *See* Docs. 145, 169. The Court DENIES Ms. Romero-Valdez's motion for summary judgment as pertaining to Count XII (Doc. 95).

This Memorandum Opinion and Order is the final order in a series addressing the parties' partial motions for summary judgment piecemeal. Therefore, to the extent that Document 88 (Parnall's "Motion for Summary Judgment on Plaintiff's Claims") is a motion for complete summary judgment, the Court grants it in part and denies it in part. The Court summarizes its rulings on all claims in this case as follows, with still-live disputes bolded:

Count I (Retaliatory/Constructive Discharge in Violation of Public Policy): dismissed by stipulation. Doc. 173.

Count II (Breach of Implied Contract): summary judgment granted in Parnall's favor. Doc. 145.

**Count III (Breach of the Implied Covenant of Good Faith and Fair Dealing): partial summary judgment granted in Parnall's favor, but portions of this count remain at issue. Doc. 145.**

**Count IV (FMLA Violation and Interference): summary judgment motion by Parnall denied. Doc. 149. This count remains at issue.**

Count V (NMHWA Interference): summary judgment granted in Parnall's favor. Doc. 149.

**Count VI (NMHRA, Title VII, and Pregnancy Discrimination Act Violations): summary judgment motions by both sides denied. Doc. 169. This count remains at issue.**

Count VII (Retaliation): dismissed by stipulation. Doc. 173.

Count VIII (Interference with NMHRA and Title VII Rights): summary judgment granted in Parnall's favor. Doc. 169.

**Count IX (Breach of Contract and Recission): summary judgment motions by both sides denied. This count remains at issue.**

**Count X (Fraud): summary judgment motions by both sides denied. This count remains at issue.**

Count XI (Defamation): dismissed by stipulation. Doc. 173.

**Count XII (Declaratory Judgment): summary judgment motions by both sides denied. This count remains at issue.**

It is so ordered.

_____
LAURA FASHING
UNITED STATES MAGISTRATE JUDGE